# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

NATIONAL CITY COMMERCIAL  
CAPITAL COMPANY, LLC,

      Plaintiff,

vs.

CALIBER HOMES, LLC, *et al.*,

      Defendants.

Civil Action No. 1:08-cv-468

Weber, J.; Black, M.J.

## ORDER AND REPORT AND RECOMMENDATION

This civil case is before the Court on defendants' motion to dismiss the amended complaint (Doc. 19), plaintiff's memorandum in opposition (Doc. 30), and defendants' reply memorandum (Doc. 32), and on plaintiff's motion for leave to file a sur-reply memorandum (Doc. 34) and defendants' response thereto. (Doc. 35).

Defendants do not oppose plaintiff's motion for leave to file a sur-reply memorandum. Therefore, for this reason and for good cause shown, the motion for leave to file a sur-reply memorandum is **GRANTED** and considered as filed.

Plaintiff National City Commercial Capital Company, LLC (National City), brings this action against defendants Caliber Homes, LLC, Caliber Holdings Company, LLC, Performance Construction, Inc., Michael J. Lichtie, Brent D. Butcher, and Deseret Sky Development, LLC. (Doc. 18, First Amended Complaint). The amended complaint alleges that defendants are guarantors on a loan made by plaintiff National City to Deseret Aviation, LLC in connection with Deseret Aviation's purchase of a LearJet aircraft.[1] The amended

---

[1] Deseret Aviation is not a defendant in this lawsuit.

complaint further alleges that Deseret Aviation is in default of the Promissory Note and Security Agreement and that defendants are jointly and severally liable for the amounts due and owing. Plaintiff invokes the diversity jurisdiction of this Court which is not in dispute.

**Facts**

Plaintiff National City Commercial Capital Company, LLC is an Indiana limited liability company with its principal place of business in Cincinnati, Ohio. (Doc. 18, ¶1; Doc. 30, Barlow Aff. ¶2).[2] National City Capital Corporation, the entity which executed the guaranties with defendants, merged out of existence into plaintiff National City Commercial Capital, LLC in 2007. (Doc. 34, Exh. 1).

Defendant Lichtie is the sole member of defendants Caliber Homes and Caliber Holdings and is a member of defendant Deseret Sky Development. Defendant Butcher is also a member of defendant Deseret Sky Development and is the sole shareholder of defendant Performance Construction, Inc. Defendant Performance Construction is a Utah corporation having its principal place of business in Utah. The remaining defendants are all citizens of Utah. (Doc. 18, ¶¶2-8; Doc. 19, Lichtie Aff., Butcher Aff.).

Defendants Lichtie and Butcher formed Deseret Aviation, LLC in 2005 for the purpose of purchasing two aircrafts, one of which was a LearJet Aircraft. (Doc. 19, Lichtie

---

[2] Defendants' motion to dismiss states that National City Commercial Capital, LLC is listed as having an Indianapolis address in the records of the Indiana Secretary of State. (Doc. 19, Burgess Aff., ¶3). To the extent defendants present this evidence to assert that National City is "headquartered" in Indianapolis (Doc. 19 at 2) and to suggest that National City's principal place of business is not in Cincinnati, the Court does not weigh the controverted assertions of the parties in ruling on a motion to dismiss for lack of personal jurisdiction. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). As explained, *infra*, the Court must consider the pleadings and affidavits in the light most favorable to plaintiff in disposing of a Rule 12(b)(2) motion to dismiss. *Id*. Thus, for purposes of the motion, the Court accepts plaintiff's representation that National City's principal place of business is in Ohio. In any event, a company's headquarters does not necessarily translate into its principal place of business. *See Rapier v. Union City Non-Ferrous, Inc.,* 197 F. Supp.2d 1008, 1013 (S.D. Ohio 2002) (Rice, J.) (and cases cited therein).

Aff., Butcher Aff.). Defendant Lichtie sought financing for the purchase of a business aircraft from National City in Cincinnati, Ohio on the recommendation of a third party. (Doc. 19, Lichtie Aff.; Doc. 30, Barlow Aff. at ¶¶ 4, 5). Michael Barlow, the National City loan officer in charge of the financing, began collecting information regarding Deseret Aviation's financial wherewithal. (Doc. 30, Barlow Aff. at ¶ 6). Shortly thereafter, defendants Lichtie and Butcher began providing Mr. Barlow with documents to aid in National City's due diligence investigation of Deseret Aviation. (*Id*.). The terms of the financing agreement were negotiated with Mr. Lichtie through telephone and email correspondence to Mr. Barlow, which, according to Mr. Barlow, was often initiated by Mr. Lichtie. (*Id*. at ¶ 7). The papers pertaining to the loan were sent to Lichtie and Butcher in Utah (Doc. 19, Lichtie Aff., Butcher Aff.), and Deseret Aviation executed a Security Agreement and Promissory Note in the amount of $6,600,000 on or about October 27, 2006, and delivered the documents to Mr. Barlow. (Doc. 18, ¶ 13; Doc. 30, Barlow Aff. at ¶ 8). On or about the same date, defendants executed separate guaranties and delivered those executed guaranties to National City's counsel in Cincinnati, Ohio. (Doc. 18, ¶ 17; Doc. 30, Barlow Aff. at ¶ 8). The defendants had yearly financial reporting obligations and pursuant to those obligations Mr. Barlow received certain financial reports from the defendants. (Doc. 30, Barlow Aff. at ¶ 10).

In 2008, Deseret Aviation defaulted on its loan obligations. Deseret Aviation commenced bankruptcy proceedings in the United States Bankruptcy Court for the District of Utah in June 2008. When Deseret Aviation was unable to cure its default, National City took position of the LearJet and sold it for $5,800,000. (Doc. 18, ¶ 22). The remaining balance of the Promissory Note, plus interest and other costs remain due. (Doc. 18, ¶ 23).

Defendants now seek dismissal of this action for lack of personal jurisdiction, improper venue, and insufficient service of process. (Doc. 19).

**Personal Jurisdiction**

Defendants contend that this case should be dismissed because the Court lacks personal jurisdiction over the defendants.

Plaintiff asserts this Court has personal jurisdiction over the defendants because defendants consented to the Court's exercise of personal jurisdiction when they signed guaranties which contained forum selection clauses specifying such consent. In the alternative, plaintiff contends this Court may exercise personal jurisdiction over the defendants because the requirements of both the state long-arm statute and constitutional due process are satisfied.

Defendants contend the forum selection clause contained in the guaranties is invalid and unenforceable, and that defendants had insufficient contacts with the forum state to satisfy the constitutional due process requirements to confer personal jurisdiction.

Plaintiff bears the burden of demonstrating that personal jurisdiction exists. *Air Products and Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). In the absence of an evidentiary hearing, the Court must consider the pleadings and affidavits in the light most favorable to plaintiff in ruling on a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). *CompuServe*, 89 F.3d at 1262. To defeat defendants' motion, plaintiff need only establish a *prima facie* case of jurisdiction and the burden on plaintiff is "relatively slight." *Safetech International*, 503 F.3d at 549.

4

The Court does not weigh the assertions by the party seeking dismissal and thereby avoids a situation wherein non-resident defendants regularly defeat jurisdiction simply by filing an affidavit that denies all the jurisdictional facts. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). The motion to dismiss will be granted only if all the specific facts alleged by the plaintiff collectively fail to establish a *prima facie* case of personal jurisdiction. *Id.* And, in a diversity case, the law of the forum state – in this case Ohio – governs the question of personal jurisdiction. *Preferred Capital Inc. v. Sarasota Kennel Club, Inc.,* 489 F.3d 303, 308 (6th Cir. 2007).[3]

### A. The forum selection clause

The guaranties in this case contain the following clause:

> Consent to Jurisdiction. As a specific inducement for the Loan by Lender, the Guarantor hereby absolutely and irrevocably consents and submits to the jurisdiction of the federal and state courts sitting in Cincinnati, Ohio in connection with any action or proceeding brought against the Guarantor by the Lender hereof arising out of or relating to the Guaranty. The Guarantor waives and agrees not to assert in any such action or proceeding, in each case, to the fullest extent permitted by applicable law, any claim that (a) the Guarantor is not personally subject to the jurisdiction of any such court . . . (c) any such suit, action or proceeding is brought in an inconvenient forum, (d) the venue of any such suit, action or proceeding is improper, or (e) this Guaranty may not be enforced in or by any such court. . . .

(Doc. 1, Exhs. A-F)

Because personal jurisdiction over a party is a right that may be waived, the use of forum selection clauses is one method whereby contracting parties may agree to submit to the jurisdiction of a particular court. *Preferred Capital, Inc. v. Associates in Urology*, 453

---

[3] Ohio law and federal law on the issue of forum selection clauses are substantially similar. *General Electric Co. v. G. Siempelkamp*, 29 F.3d 1095, 1098 n. 3 (6th Cir. 1994).

F.3d 718, 721 (6th Cir. 2006). "[A] forum selection clause contained in an arm's-length commercial transaction between two business entities is valid and enforceable, irrespective of the number of contacts involved with the forum state." *Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hospital, Inc.,* 66 Ohio St.3d 173,174 610 N.E.2d 987, 988 (1993) (upholding the validity of a forum selection clause in a contract between a California company and an Ohio-based company which designated Ohio as the forum and Ohio law as the choice of law).[4] As long as the forum selection clause has been freely bargained for, the clause is *prima facie* valid. *Preferred Capital*, 453 F.3d at 721; *Kennecorp*, 66 Ohio St.3d at 175, 610 N.E.2d at 989. Indeed, "in light of present-day commercial realities, a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside." *Preferred Capital*, 453 F.3d at 721 (citing *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 125 (1972)); s*ee also Preferred Capital, Inc. v. Power Engineering Group, Inc.*, 112 Ohio St.3d 429, 431, 860 N.E.2d 741, 744 (2007); *Kennecorp,* 66 Ohio St.3d at 175, 610 N.E.2d at 989.

The Court considers three factors in determining the validity of a particular forum selection clause: (1) the commercial nature of the contract; (2) the absence of fraud or overreaching; and (3) whether enforcement of the forum selection clause would otherwise be unreasonable or unjust. *Associates in Urology,* 453 F.3d at 721 (citing *Info. Leasing Corp. v. Jaskot,* 151 Ohio App.3d 546, 550-52, 784 N.E.2d 1192, 1195-96 (Ohio App. 1st Dist. 2003); *M/S Bremen*, 407 U.S. at 15; *Kennecorp,* 66 Ohio St.3d at 176, 610 N.E.2d at 989).

---

[4]The Supreme Court of Ohio has determined that "a minimum-contacts analysis as set forth in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, and its progeny, is not appropriate in determining the validity of forum selection clauses in commercial contracts." 66 Ohio St.3d at 175, 610 N.E.2d at 988-99.

6

With respect to the first factor, the commercial nature of the contract, defendants Lichtie and Butcher assert that they are individuals residing in Utah, and that hey are not commercial entities. They contend that "forum-selection clauses are less readily enforceable against consumers." (Doc. 19 at 7) (quoting *Preferred Capital, Inc. v. Power Engineering Group, Inc.*, 112 Ohio St.3d 429, 432, 860 N.E.2d 741, 745 (2007)).

Defendants do not dispute that the guaranties between National City and the other defendants – Caliber Homes, LLC, Caliber Holdings Company, LLC, Performance Construction, Inc., and Deseret Sky Development, LLC – are commercial transactions between business entities. Moreover, the evidence does not show that defendants Butcher and Lichtie are in the same position as consumers who entered into a contract with a commercial entity. *See Info. Leasing Corp.,* 784 N.E.2d at 1195 (finding that defendant sole proprietorship was not in the same position as a consumer who enters into an agreement with a commercial entity, and was presumed "to have some experience in contractual and business matters."). Rather, the evidence shows that defendants Butcher and Lichtie are business persons who entered into the guaranties with National City for the sole purpose of securing financing for Deseret Aviation, a company they formed for the purpose of purchasing the LearJet Aircraft. (Doc. 19, Lichtie Aff. ¶¶3, 4, Butcher Aff. ¶¶3, 4). In addition, the evidence shows that Mr. Butcher is also the sole shareholder of defendant Performance Construction (Doc. 19, Butcher Aff. ¶2), and that defendant Lichtie is the sole member of defendants Caliber Homes and Caliber Holdings. (Doc. 19, Lichtie Aff. ¶3). Both Butcher and Lichtie are also members of defendant Deseret Sky Development LLC. (Doc. 19, Lichtie Aff. ¶8).

Defendants Butcher's and Lichtie's ownership and involvement in the other entities which guaranteed the loan to Deseret Aviation, a company they formed, shows that their individual guarantees were commercial transactions made for the specific purpose of securing the loan to Deseret Aviation. The forum selection clauses in the guaranties signed by Butcher and Lichtie are thus part of commercial contracts between business persons who are presumed to have experience in contractual and business matters, unlike an unsophisticated consumer who enters into an agreement with a commercial entity. *Preferred Capital*, 453 F.3d at 721 (citing *Jaskot,* 784 N.E.2d at 1195);[5] *see also Information Leasing Corp. v. King*, 155 Ohio App.3d 201, 206, 800 N.E.2d 73, 77 (Ohio App. 1st Dist. 2003) ("Unlike a consumer who enters into a contract with a commercial entity, a person owning and running his or her own business is presumed to have some experience in contractual and business matters."). Accordingly, the undersigned concludes that the guaranties at issue are commercial contracts between defendants and National City and that the first factor is satisfied.

The second factor in determining the validity of the forum selection clause is whether there is evidence of overreaching or fraud on the part of National City. Defendants argue there was overreaching on the part of National City because it used a "form" contract that included the forum selection provisions and "because of the absence of any Ohio situs for

---

[5] The *Jaskot* court reasoned: "In this case, Jaskot's agreement with ILC was not a consumer contract but a commercial one. . . . Jaskot is the owner and operator of Highbridge Mobil, a for-profit commercial enterprise. His agreement with ILC was between two business entities. It is immaterial that Jaskot is a sole proprietor. Unlike a consumer who enters into a contract with a commercial entity, Jaskot is presumed to have some experience in contractual and business matters." *Info. Leasing Corp. v. Jaskot*, 151 Ohio App.3d 546, 551, 784 N.E.2d 1192, 1195 -96 (Ohio App. 1st Dist. 2003).

any of the parties or of the transaction itself." (Doc. 19 at 8).

"The fact that an agreement is embodied in a boilerplate form, however, does not automatically defeat the validity of a forum-selection clause." *Bohl v. Hauke*, No. 08CA10, 2009 WL 104632, at *3 (Ohio App. 4th Dist. Jan. 12, 2009) (citing *Rini Wine Co. v. Guild Wineries & Distilleries*, 604 F. Supp. 1055, 1058 (N.D. Ohio 1985)). Rather, the inquiry must focus on not the formal appearance of the contract, but the bargaining power of the parties and whether there is evidence that defendants were "aware of the provision, could have objected at the time, and had the means of doing so." *Rini Wine Co.*, 604 F. Supp. at 1058.

Here, defendants do not argue that National City possessed undue influence or excessive bargaining power, nor do they allege fraud in the negotiation or acceptance of the forum selection clause. Defendants had numerous opportunities to review and challenge the forum selection clauses. Lichtie is the sole owner of Caliber Homes and Caliber Holdings, and signed the Deseret Sky Development's Guaranty as well as his own. Likewise, Butcher signed two guaranties, one on his own behalf and one for Performance Construction. (Doc. 1, Exhs. A-F). Thus, the use of a form guaranty does not constitute overreaching on the part of National City.

Defendants also argue, without citation to legal authority, that National City overreached "because of the absence of any Ohio situs for any of the parties or of the transaction itself." (Doc. 19 at 8). Contrary to defendants' argument, National City has its principal place of business in Cincinnati, Ohio. (Doc. 1, Exhs. A-F; Barlow Aff. ¶2). More importantly, the Supreme Court of Ohio has rejected the use of "a minimum-contacts analysis as set forth in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, and its

progeny" in assessing the enforceability of forum selection clauses. *Kennecorp,* 66 Ohio St.3d at 175, 610 N.E.2d at 988-99; s*ee also Info. Leasing Corp. v. Jaskot*, 151 Ohio App.3d 546, 553, 784 N.E.2d 1192, 1197 (Ohio App. 1st Dist. 2003). Therefore, the absence or presence of such contacts does not affect the question of overreaching. Defendants' argument does not persuade the undersigned that there was overreaching on the part of National City.

The third factor in determining the validity of a forum selection clause is whether enforcement of the clause would be unreasonable or unjust. "A finding of unreasonableness or injustice must . . . be based on more than inconvenience to the party seeking to avoid the forum-selection clause's requirements." *Jaskot*, 151 Ohio App.3d at 552, 784 N.E.2d at 1196. Rather, enforcement of the clause must result in a manifest and grave inconvenience to the party seeking to avoid enforcement such that the party would be "effectively deprived of meaningful day in court." *Id.* (quoting *M/S Bremen*, 407 U.S. at 19). In other words, the Court must decide "whether the chosen forum is so inconvenient as to, in effect, afford no remedy at all, thus 'depriv[ing] litigants of their day in court.'" *Jaskot,* 151 Ohio App.3d at 552, 784 N.E.2d at 1196 (quoting *Kennecorp*, 66 Ohio St.3d at 176, 610 N.E.2d at 989).

Defendants argue that they could not be hailed into court in Ohio for any reason except for the forum selection provision contained in the guaranties. They also contend, without evidentiary support, that it would be an unreasonable financial and logistical burden to require them to defend in Ohio and that plaintiff, as a large commercial entity, is better equipped financially to pursue this case in Utah where the defendants reside. (Doc. 19 at 8).

As stated above, whether defendants had sufficient contacts with the State of Ohio is

10

not relevant to whether the forum selection clause is valid. *Kennecorp,* 66 Ohio St.3d at 175, 610 N.E.2d at 988-99. In addition, defendants have failed to make a "strong showing" that the forum selection clause should be set aside as unreasonably burdensome. *Preferred Capital*, 453 F.3d at 721; s*ee also Interamerican Trade Corp. v. Companhia Fabricadora De Pecas,* 973 F.2d 487, 490 (6th Cir. 1992) (party challenging forum selection clause bears a "heavy burden of proof" showing clause should be set aside because of inconvenience). Indeed, distance from the forum state alone is not enough of an inconvenience to invalidate a forum selection clause. *Four Seasons Enterprises v. Tommel Financial Services, Inc.,* No. 77248, 2000 WL 1679456, at *4 (Ohio App. 8th Dist. Nov. 9, 2000). Nor is the hardship incidental to litigation sufficient since litigation subjects all parties to some degree of burden. *Rini Wine Co.*, 604 F. Supp. at 1059. Further, the fact that the selected forum is likely to subject a party to greater expense is not a basis for overturning a forum selection clause. *See TMT Logistics, Inc. v. Zambelli US, LLC*, No. 3:08CV1776, 2008 WL 4845948, at *3 (N.D. Ohio Nov. 5, 2008) (upholding forum selection despite likelihood of greater expense for American company to litigate in Italy); *Global Link LLC v. Karamtech Co.*, No. 06-CV-14938, 2007 WL 1343684, at *3 (E.D. Mich. May 8, 2007) (upholding forum selection despite the fact that it would be "more expensive and cumbersome" for American party to litigate in Korea).

"The essential inquiry is whether [the party opposing the forum selection clause] could foresee these inconveniences at the time of entering into the agreement. . . ." *Rini Wine Co.*, 604 F. Supp. at 1059. As the *Four Seasons* court recognized:

> [W]here matters impacting upon the convenience of a particular forum were known to or foreseeable by plaintiff at the time the contract was negotiated

11

> and accepted, and where plaintiff can point to no change in circumstances which would justify relief from its contractual commitment, such matters do not justify a refusal to enforce the clause.

*Four Seasons*, 2000 WL 1679456, at *4; s*ee also Interamerican Trade Corp,* 973 F.2d at 489-90 (upholding forum selection clause where impact of clause was either known or reasonably foreseeable when parties entered into contract).

In the instant case, the prospect of litigating this matter in Cincinnati, Ohio was known or at least foreseeable to defendants. Defendants cite to nothing about the operation and effect of the forum selection clause that they either did not know or could not have anticipated when negotiating or executing the guaranties. The language of the guaranties is explicit and clear: "Guarantor hereby absolutely and irrevocably consents and submits to the jurisdiction of the federal and state courts sitting in Cincinnati, Ohio in connection with any action or proceeding brought against the Guarantor by the Lender hereof arising out of or relating to the Guaranty." (Doc. 1, Exhs. A-F). Defendants knew they were contracting with an Ohio corporation and that they would be dealing with Ohio citizens. (Doc. 1, Exhs. A-F at page one of the Guaranty [identifying National City Capital Corporation as an Ohio Corporation having its principal place of business in Cincinnati, Ohio]). *See also Wm. R. Hague, Inc. v. Sandburg,* 468 F. Supp.2d 952, 961 (S.D. Ohio 2006). Whatever inconvenience defendants might suffer by being forced to litigate in the Ohio forum to which they agreed was clearly foreseeable at the time of contracting. Moreover, defendants do not allege they will be treated unfairly if forced to litigate in the Ohio forum, nor is there evidence that litigation in Ohio, rather than Utah or some other forum, would be so manifestly or gravely inconvenient as to deny them a meaningful day in court. Thus, the

undersigned concludes that enforcement of the forum selection clause would not be unjust or unreasonable.

In summary, the undersigned finds that the guaranties at issue are commercial in nature. In addition, the forum selection clause was not entered into as a result of fraud or overreaching. Finally, the forum selection clause in this case is neither unreasonable nor unjust. Accordingly, the undersigned concludes that the forum selection clause is valid and enforceable, and that the Court therefore has personal jurisdiction over the defendants. Hence, the Court need not reach plaintiff's alternate argument that the Court may exercise personal jurisdiction over the defendants since both the state long-arm statute and constitutional due process requirements are met.

To the extent defendants argue that National City Commercial Capital Company, LLC is without standing to enforce the forum selection clause because it is not a party to the contract (Doc. 32), the undersigned disagrees. National City Capital Corporation, the entity which executed the guaranties, merged out of existence into plaintiff National City Commercial Capital, LLC. (Doc. 34, Exh. 1). Each of the guaranties signed by defendants contains the following clause:

> Benefit. Guarantor agrees that this Guaranty shall inure to the benefit of ***and may be enforced by Lender, its successors and assigns and any subsequent holder of the Promissory Note*** and shall be binding upon and enforceable against the Guarantor and its respective legal representatives, successors and assigns.

(Doc. 1, Exhs. A-F at ¶ 11) (emphasis added). Thus, when defendants executed the guaranties, they agreed to allow the Lender (National City Commercial Capital Corporation)

13

and its successor (plaintiff National City Commercial Capital, LLC) to enforce the obligations. Defendants' contrary argument in this regard is therefore without merit.

Accordingly, for the reasons set forth above, the undersigned concludes and recommends that defendants' motion to dismiss for lack of personal jurisdiction should be denied.

**Venue**

Defendants argue that venue is improper in Cincinnati, Ohio and seek dismissal of this case pursuant to Fed. R. Civ. P. 12(b)(3).

Venue in diversity cases is governed by 28 U.S.C. §1391(a), which provides that civil suits based solely upon diversity of citizenship may be brought only in the judicial district where (1) any defendant resides, if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or, (3) the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a).

Defendants contend that this action could have been brought in the District of Utah where all the defendants reside and in which a substantial part of the events or omissions giving rise to the claim to enforce the guaranties. They contend that subsection (a)(3) of § 1391 does not apply to this case since the District of Utah qualifies as a "district in which the action may otherwise be brought" and subsection (a)(3) only applies in the event the other two subsections are inapplicable. (Doc. 19 at 9). Defendants assert that this action is properly venued in the District of Utah, but not in the Southern District of Ohio, and

14

therefore this action should be dismissed.

The undersigned disagrees with defendants' argument for two reasons.

First, defendants consented to venue in the Southern District of Ohio and waived their right to dispute venue in this district by virtue of the express terms of the guaranties they entered into with National City: "The Guarantor waives and agrees not to assert in any such action or proceeding . . . any claim that . . . (d) the venue of any such suit, action or proceeding is improper." (Doc. 1, Exhs. A-F at 7). As discussed above, defendants have failed to show that enforcement of the forum selection clause would be unreasonable or unjust. *See Moran v. A/C Financial, Inc.,* No. 3-05-071, 2006 WL 2815491, at *3 (S.D. Ohio Sept. 28, 2006) (Rose, J.) (and cases cited therein).

Second, a substantial part of the events giving rise to the breach of contract claims in this case occurred in Ohio and venue is proper in this district under Section 1391(a)(2). In a diversity case, venue is appropriate in "*any* forum with a substantial connection with the plaintiff's claim." *First of Mich. Corp. v. Bramlet,* 141 F.3d 260, 263 (6th Cir. 1998) (emphasis added) (fact that substantial activities took place in one district does not disqualify venue in another district as long as substantial activities took place in other district). The chosen forum need not be the forum with the most substantial connection. *Bramlet*, 141 F.3d at 263.

In this case, defendants sought, negotiated, and received financing from National City through their email, telephone and mail contacts with Mr. Barlow in Cincinnati, Ohio. (Doc. 30, Barlow Aff. ¶¶4-8). The defendants also supplied and were under a continuing obligation to provide financial statements to National City at its Cincinnati, Ohio office. *Id.*

15

In addition, the injury from the alleged breach of the guaranties was experienced by National City in Ohio. These activities were substantial enough to support venue in the Southern District of Ohio. *See Pearle Vision, Inc. v. N.J. Eyes, Inc.*, No. 1:08-cv-190, 2009 WL 73727, at *4 (S.D. Ohio Jan. 6, 2009) (Dlott, J.). Thus, the undersigned finds that venue is proper in this district and recommends that defendants' motion to dismiss on this basis should be denied.

### Service of Process

Subsequent to the filing of the motion to dismiss, a return showing execution of service of process was recorded on the Court's docket. *See* Docs. 20 through 29. The documents reflect service on each of the defendants between July 14 and July 16, 2008. Therefore, this case should not be dismissed for insufficient service of process.

**IT IS THEREFORE RECOMMENDED THAT** defendants' motion to dismiss the amended complaint (Doc. 19) be **DENIED**.


Date: 8/27/09                                              **/s/Timothy S. Black**
                                                           Timothy S. Black
                                                           United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


NATIONAL CITY COMMERCIAL
CAPITAL COMPANY, LLC,

    Plaintiff,                                               Civil Action No. 1:08-cv-468

vs.

CALIBER HOMES, LLC, et al.,
    Defendants.


**NOTICE TO PARTIES REGARDING FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") **within TEN DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections **within TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).